[No. F022447. Fifth Dist. Sept. 11, 1995.]

FONTANA PAVING, INC., Plaintiff and Respondent, v.
HEDLEY BROTHERS, INC., et al., Defendants and Appellants.

COUNSEL

Greenbaum & Ferentz, Martin B. Greenbaum and David J. Bornstein for Defendants and Appellants.

Reid & Hellyer and Debra Bartle Gervais for Plaintiff and Respondent.

OPINION

THAXTER, J.— ▇ We hold here that a mechanic's lien claim recorded more than 90 days after completion of the work of improvement is ineffective notwithstanding a later filed notice of completion which erroneously recites a completion date postdating the claim of lien. As we read the applicable statutes,[1] a valid notice of completion serves to shorten the lien-claim filing period. An invalid notice of completion has no legal effect, although it may furnish a factual basis for estopping a statute of limitations defense. Because there was no evidence supporting estoppel here, we will reverse the trial court's judgment in favor of the lien claimant.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant Hedley Brothers, Inc. (Hedley) was the general contractor engaged to construct a Wal-Mart Store in Ridgecrest, Kern County, on property owned by Wal-Mart Stores, Inc. The written construction contract was dated May 17, 1990, and provided for substantial completion of the work no later than December 18, 1990. Hedley, in turn, entered into a subcontract with L M Contracting, Inc. (L M) for the asphalt paving work associated with the project. Respondent Fontana Paving, Inc. (Fontana) furnished asphaltic concrete materials to the subcontractor at the jobsite.

---

[1] Unless otherwise specified, all statutory references are to the Civil Code.

Section 3116 provides: "Each claimant other than an original contractor, in order to enforce a lien, must record his claim of lien after he has ceased furnishing labor, services, equipment, or materials, and before the expiration of (a) 90 days after completion of the work of improvement if no notice of completion or cessation has been recorded, or (b) 30 days after recordation of a notice of completion or notice of cessation."

In relevant part, section 3093 provides: " 'Notice of completion' means a written notice, signed and verified by the owner or his agent, containing all of the following:

"(a) The date of completion (other than a cessation of labor). The recital of an erroneous date of completion shall not, however, affect the validity of the notice if the true date of completion is within 10 days preceding the date of recording of such notice.

" . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"The notice of completion shall be recorded in the office of the county recorder of the county in which the site is located, within 10 days after such completion. . . ."

L M completed its paving work before December 31, 1990, and Hedley paid it $295,000, leaving an unpaid retention of only $1,350. L M did not pay Fontana for all materials supplied, leaving an unpaid balance of $72,709.33.

The entire work of improvement was completed no later than January 23, 1991. The City of Ridgecrest issued a certificate of occupancy and the Wal-Mart Store opened for business in January. No notice of completion was recorded at that time.

On March 1, 1991, Fontana recorded a mechanic's lien claim for the $72,709.33 balance due it. Unfortunately, the claim was filed in San Bernardino County rather than Kern County, in which the property was located.[2]

On March 25, 1991, Fontana executed an "Unconditional Waiver and Release Upon Progress Payment" pursuant to section 3262, subdivision (d)(2). The release form acknowledged that Fontana had been paid and received a progress payment of $1,350[3] for material furnished to the project, and it released "pro tanto any mechanic's lien" which Fontana had on the job for materials furnished to Hedley and L M "through Dec. 31, 1991 [sic]" except for "any retention or items furnished after that date." Before signing the waiver and release form, Fontana's credit manager altered it by adding a typewritten notation: "This [$1,350 payment] is only a partial payment of monies owed thru 12-31-90. There is still a balance of $71,359.33."

On June 4, 1991, Fontana, having discovered that its original lien claim was filed in the wrong county, recorded a new claim of lien in Kern County.

On June 25, 1991, Hedley recorded in Kern County a notice of completion for the project. The notice was dated June 18, 1991, and recited that the work of improvement was completed on that date. The notice was signed by Thomas D. Eads, Hedley's vice-president. Immediately under the signature

---

[2]No further action was taken with respect to this claim of lien, and Fontana does not rely on it.

[3]This payment was apparently for the retention previously withheld from L M by Hedley. Hedley's check for that amount was payable jointly to L M and Fontana. Fontana credited the payment to its balance owing from L M, reducing the balance to $71,359.33, which is the amount in dispute in this action.

line on the printed form appeared the words: "Signature of owner or corporate officer of owner named in paragraph 2 or his agent."[4]

Fontana filed this action on July 19, 1991, against L M, Hedley, Wal-Mart Stores, Inc., and other defendants, seeking various forms of relief, including foreclosure of its mechanic's lien recorded on June 4. On April 13, 1993, Hedley recorded a release of lien bond pursuant to section 3143, and Wal-Mart Stores, Inc. was thereafter dismissed from the action with prejudice. Fontana then filed a supplemental complaint adding a cause of action on the release bond against Hedley, as principal, and appellant Federal Insurance Company, as surety. Hedley and Federal Insurance Company filed a general denial and asserted various affirmative defenses. One affirmative defense alleged that the action was barred because Fontana's claim of lien was not timely filed in accordance with section 3116. Another asserted that the notice of completion was invalid pursuant to section 3093.

The case was tried without a jury. After submission the court issued a written ruling ordering judgment for Fontana against L M for $71,359.33 plus interest, costs, and attorney fees, and directing that the proceeds of the mechanic's lien release bond issued by Federal Insurance Company on behalf of Hedley be released to Fontana in the amount of $71,359.33 plus interest and costs.[5]

In its written ruling the court made certain findings, including:

"2. For purposes of section 3116, the work of improvement was completed no later than January 23, 1991. . . .

"3. [Fontana] properly filed its Mechanic's Lien in Kern County on June 4, 1991 . . . which was more than 90 days after the work of improvement was completed. Accordingly, Fontana may not rely upon section 3116(a) to enforce the Lien.

---

[4]Why the notice was recorded in June, reciting a June 18 completion date, when the work was actually completed in January is a mystery. Hedley's owner and president, George Hedley, testified that it was not filed at his direction. He speculated it was probably requested by someone in Hedley's accounting department, the bonding company, or Wal-Mart Stores, Inc. Thomas Eads, who signed the notice on Hedley's behalf, was not involved with the Wal-Mart project until after it was completed. He did not shed any light on why the notice was tardily prepared and recorded other than to say that he depended on a project manager for information and completion of paperwork relating to the job.

[5]L M defaulted before trial. At the conclusion of the plaintiff's case the court granted the motions for judgment under Code of Civil Procedure section 631.8 made by a defendant and cross-complainant, Indemnity Company of California, and cross-defendant Calvin Leong. Fontana has not appealed from that judgment. Neither L M, Indemnity Company of California, nor Leong is involved in this appeal.

"4. [Hedley] filed a Notice of Completion on June 25, 1991 . . . which was signed by Thomas D. Eads, employed by Hedley. For purposes of signing the Notice, Hedley/Eads was the agent of Wal-Mart Stores, Inc., the owner. Hedley prepared/generated the Notice on its own.

"5. The Notice, even though it contains an erroneous date of completion, i.e., June 18, 1991, is valid. Hedley is estopped from arguing that the Notice, which it [Hedley] prepared for its own purposes, is invalid as violative of Civil Code section 3093.

"6. If Hedley had not filed the Notice, Fontana would be 'out of luck' in foreclosing the Lien. Since the Notice is valid, Fontana would have been entitled to rely upon it in filing the Lien 30 days *after* its recordation. In reality, the Lien was filed 30 days *before* the Notice. Accordingly, the Lien is premature.

"7. In enforcement of any lien, a claimant may opt to wait to file its lien until 30 days after recordation of a notice of completion. (section 3116 (b) ) The key policy behind section 3116 (b) is that the claimant, such as Fontana, is entitled to rely upon the notice of completion to protect and enforce its rights. In this case, Fontana relied upon the fact that a notice of completion had *not* been filed in making its decision to file the Lien.

"8. In *Century Superior Gunite, Inc.* v. *Rodriguez* (1981) 118 Cal App 3d Supp. 12 [173 Cal.Rptr. 661], the Appellate Department, Superior Court, Los Angeles, dealt with the issue of prematurity as it relates to section 3116 and the filing of a lien prior to completion of the work of improvement. In discussing this issue, the court said:

" 'A plain untortured construction of the foregoing section seems to provide for a lien claim to be filed by one other than the original contractor at anytime after he has ceased furnishing labor, services, equipment or materials, but not later than the expiration dates prescribed. . . .'

"Fontana clearly did not record the Lien after expiration of the 30 day period following recordation of the Notice, which is precluded by section 3116. Pursuant to section 3116, the fact that Fontana recorded the Lien 30 days before the Notice does not make the Lien unenforceable since the Lien was not filed later than the expriration [*sic*] date prescribed."

Judgment was entered on July 27, 1994. Hedley and Federal Insurance Company filed a timely appeal.

## Discussion

Appellants challenge the trial court's conclusions that the notice of completion was valid, thereby making Fontana's lien claim timely and that Hedley is estopped from arguing to the contrary. They also claim the trial court improperly ignored their defense based on the waiver and release of liens executed by Fontana. Because we agree with appellants' first contention, we do not reach the second.

### 1. *The Notice of Completion Was Invalid and Had No Effect on the Statutory Lien-filing Period*

*Statutory Purposes*

The court in *Gary C. Tanko Well Drilling, Inc.* v. *Dodds* (1981) 117 Cal.App.3d 588 [172 Cal.Rptr. 829] summarized the nature and purpose of the mechanic's lien laws:

"A mechanics' lien is the remedy provided by the California Constitution as implemented by the statutes; it enforces against the owner of property payment of the debt incurred for the performance of labor, or the furnishing of material used in construction. (*Heberling* v. *Day* (1922) 59 Cal.App. 13, 22 . . . .) The purpose of the statute, Civil Code sections 3082 through 3267, is to provide protection to the supplier of materials or services used in an improvement to land, and to ensure that the supplier receives the payment due. (*Nolte* v. *Smith* (1961) 189 Cal.App.2d 140, 144 . . . .) The supplier requires this protection because of the contribution which increases the value of the property. The lien holder is part of an industry which is composed of thousands of individuals and entities, 'all more or less experienced, more or less dependable, more or less honorable in their business practices, through whom money, paid out by the owner at the top must filter down.' (See *Owner Liability for Construction Costs* (1977) 52 State Bar J. 526, 527.) A project may involve thousands of dollars, months of construction, and multiple contractors, including numerous subcontractors during different phases of construction. Oftentimes, the subcontractors may not know the name of the owner of the property.

"The constitutional scheme requires a balancing of the interests of lien claimants and property owners. Our statutes relating to mechanics' liens result from the legislative adjustment regarding the respective rights of lien claimants with those of the owners of property improved. (*Borchers Bros.* v. *Buckeye Incubator Co.* (1963) 59 Cal.2d 234, 239 . . . ; *Baker* v. *Hubbard* (1980) 101 Cal.App.3d 226, 233-234 . . . .) Therefore, whenever possible,

the statutes pertaining to the enforcement of mechanics' liens should be liberally construed to effectuate the purposes of the law. (*Consolidated Lumber Co.* v. *Bosworth, Inc.* (1919) 40 Cal.App. 80, 86 . . . .) When in dispute, a determination of the prescribed time is a matter of law which may be independently considered on appeal by a construction of the pertinent statutes. (*M. Arthur Gensler, Jr., & Associates, Inc.* v. *Larry Barrett, Inc.* (1972) 7 Cal.3d 695, 703 . . . .)" (117 Cal.App.3d at pp. 593-594, fn. omitted.)

*The Relevant Time Periods*

Section 3116 specifies two alternative time periods for filing liens by claimants other than the original contractor: (a) within 90 days after completion if no notice of completion or cessation has been recorded, or (b) within 30 days after recordation of a notice of completion or cessation. In this case the actual date of completion was no later than January 23, 1991, and Fontana's lien claim was recorded 132 days later, on June 4, 1991. Clearly, Fontana's claim was untimely under the 90-day provision, and the trial court correctly so held.[6]

The timeliness of Fontana's lien claim, then, must turn on the 30-day provision. Specifically, did the notice of completion recorded on June 25 open a new 30-day period for filing liens?

*Purpose of Notice of Completion*

■ No statute *requires* an owner to file a notice of completion. If the owner records a timely notice, he obtains the benefit of a shorter lien-filing period. (*Gary C. Tanko Well Drilling, Inc.* v. *Dodds, supra,* 117 Cal.App.3d at p. 594; *Fidelity Sound Systems, Inc.* v. *American Bonding Co.* (1978) 85 Cal.App.3d Supp. 13, 18 [149 Cal.Rptr. 674]; see Marsh & Marsh, Cal. Mechanics' Lien Law and Construction Industry Practice (5th ed. 1990) § 4.35; Cal. Mechanics' Liens (Cont.Ed.Bar 2d ed. 1988) § 4.42, p. 219.)

Section 3093 sets forth 10 requirements for a valid notice of completion (see *Gary C. Tanko Well Drilling, Inc.* v. *Dodds, supra,* 117 Cal.App.3d at p. 592). The one pertinent here is that the notice must be recorded within 10 days after completion of the project.

■ ■ When the owner records a notice of completion outside the statutory 10-day period, it is invalid. In *Munger & Munger* v. *McBratney*

---

[6]At trial, Fontana presented evidence suggesting that work may have continued into June or July 1991. The trial court, however, was persuaded by Hedley's evidence and expressly found the work was completed by January 23. That finding is supported by substantial evidence.

(1955) 131 Cal.App.2d Supp. 866 [280 P.2d 232], the notice was filed before the work was completed. The notice was ineffective in shortening the 90-day lien filing period, so a lien filed more than 30 days after the notice of completion, but within 90 days of the actual date of completion, was timely.[7]

In *Doherty* v. *Carruthers* (1959) 171 Cal.App.2d 214 [340 P.2d 58], the notice of completion was recorded on October 17, 1955, some 69 days after the actual completion date. The notice erroneously recited that the work of improvement was completed on October 14, 1955. The plaintiff subcontractors and materialmen filed their claim of lien on November 16, 1955, 30 days after the notice of completion was recorded and 99 days after the actual completion date.

In *Doherty*, the appellate court expressly held that the untimely notice of completion was invalid. (171 Cal.App.2d at p. 216.) It went on, however, to affirm the trial court's judgment for the plaintiffs, applying traditional principles of estoppel. Because of evidence that the plaintiffs relied on the erroneous completion date represented by the notice of completion, the owner was estopped from denying the notice was valid or that the completion date was October 14.

While Fontana relies heavily on *Doherty*, it can find comfort in that decision only in the finding of estoppel, a subject which we discuss *post*. Nothing in *Doherty* supports a conclusion that the late filing of a notice of completion has the legal effect of extending or renewing the lien-filing period, even when the notice, as here, erroneously recites a completion date less than 10 days before the notice is recorded.

In its appellate brief, Fontana asserts that "[i]t is well settled in California that the actual completion date is not relevant if a Notice of Completion has been recorded. . . . [¶] There have been numerous cases dealing with the issue of whether a lien claimant's lien is valid if filed within thirty days of the Notice of Completion but beyond the time limit from the date of actual completion. The court has routinely held that the time allowed a materialman within which to file his claim of lien begins to run from the date of the filing of the Notice of Completion, and not from the actual date of completion." In support of this expansive claim, Fontana cites a single case, *Hughes Mfg. etc. Co.* v. *Hathaway* (1916) 174 Cal. 44 [161 P. 1159]. Its reliance on that case is misplaced.

---

[7]The *Munger* court applied former Code of Civil Procedure section 1193.1, subdivision (f), which contained provisions similar to those now found in section 3093.

In *Hughes*, the work of improvement was completed on August 7, 1913, and the owners recorded a notice of completion on August 16. The plaintiff recorded its claim of lien 30 days thereafter, on September 15. On these facts there would be no question but that the lien was timely under current section 3116, subdivision (b). A question of timeliness did arise in *Hughes*, however, because of the statutory language then contained in Code of Civil Procedure, section 1187. The owner contended that the 30-day period began running from the actual date of completion, rather than from the date on which the notice of completion was recorded. The Supreme Court rejected that contention, construing the statutory language to mean that a claim of lien filed within 30 days after the notice of completion "will be deemed to be within the time prescribed, whether within thirty days after the actual completion or not." (174 Cal. at p. 47.)

In *Hughes* the notice of completion was timely filed and valid, so the issues presented by this case were not before the court there. We find the *Hughes* holding irrelevant here.

*Century Superior Gunite, Inc.* v. *Rodriguez* (1981) 118 Cal.App.3d Supp. 12 [173 Cal.Rptr. 661], cited by the trial court in its written ruling, is equally inapplicable here. In *Century*, a subcontractor recorded its lien claims on September 21, 1978. The works of improvement, however, were not completed until March 1979. The owners then recorded valid notices of completion. The superior court appellate department reversed a municipal court judgment which had concluded the lien claims were void because they were filed prematurely. The decision merely affirms that under section 3116 a lien recorded after the claimant has ceased furnishing labor, services, equipment, or materials is valid even if the statutory period has not yet begun to run. In our case, however, the statutory period had not only begun to run but had expired before Fontana's lien was recorded.

Because the notice of completion was not filed within the 10-day period specified in section 3093, it had no legal effect on the statutory lien-filing period.[8] Absent a basis for estoppel, that period expired no later than April 23, 1991, and Fontana's lien claim was untimely.

2. *Estoppel Is Inapplicable Here Because of the Absence of Reliance*

■ The requirements for application of the doctrine of equitable estoppel are: "(1) the party to be estopped must be apprised of the facts; (2) he

---

[8]Because of our conclusion on this question, we do not consider Hedley's further argument that the notice of completion is invalid because Hedley was not acting as the owner's agent in executing and recording it.

must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct *to his injury*." (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245], italics added; see also *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 489 [91 Cal.Rptr. 23, 476 P.2d 423]; *Lentz* v. *McMahon* (1989) 49 Cal.3d 393, 399 [261 Cal.Rptr. 310, 777 P.2d 83].)

▮ The trial court expressly found that Hedley was estopped from arguing the notice of completion which it recorded on June 25, 1991, was invalid under section 3093. If this finding is supported by substantial evidence, the judgment should be affirmed. Appellants argue the doctrine cannot be applied in this case, though, because Hedley did not intend that Fontana should act upon the notice of completion and Fontana did not rely upon it.

Estoppel was applied in *Doherty* v. *Carruthers*, *supra*, 171 Cal.App.2d 214, which Fontana describes as "the most important and relevant case dealing with this issue." The facts in *Doherty* were similar to those here in two respects: each case involved an untimely notice of completion which recited an erroneous completion date, and the claim of lien in each case was recorded more than 90 days after the actual completion date. Despite those similarities, however, there are two critical differences between the cases.

In *Doherty*, the notice of completion was recorded *within* the 90-day lien period, but in this case when Hedley recorded its notice the lien period had already expired. Second, in *Doherty* the plaintiffs testified they had no independent knowledge of the actual completion date and relied solely on the erroneous date given in the notice of completion. (171 Cal.App.2d at pp. 217-218.)

Obviously, when Fontana recorded its claim of lien on June 4, 1991, it could not have been relying on any information contained in the notice of completion because that notice was not recorded until three weeks later. Fontana did not offer any evidence that it inquired of Hedley as to the completion date or that Hedley made any representations which it relied on in determining when the lien-filing period began or ended.

Fontana's credit manager, Dianne Wickson, testified that after she discovered the original lien claim had been recorded in the wrong county, she filed

a second one in Kern County. When she did so, she relied on the fact that no notice of completion had yet been filed. The trial court apparently found this evidence sufficient to satisfy the reliance element for estoppel, stating: ". . . The key policy behind section 3116 (b) is that the claimant, such as Fontana, is entitled to rely upon the notice of completion to protect and enforce its rights. In this case, Fontana relied upon the fact that a notice of completion had *not* been filed in making its decision to file the Lien." We respectfully disagree with the trial court.

Initially, we express doubt whether an owner's failure to record a timely notice of completion is properly considered a "representation" for estoppel purposes. As stated earlier, the purpose of a notice of completion is to give the owner the benefit of a *shorter* filing period. When such a notice is recorded, it puts potential lien claimants on notice that they must file their claims within 30 days. But because the owner is not required to record a notice of completion, its absence from the public records signifies nothing more than that the owner has not invoked the shorter period. While a notice of completion informs claimants of the completion date claimed by the owner, it does not follow that claimants are justified in assuming the project is not completed simply because a notice of completion is not on file. The claimants must protect themselves by ascertaining the completion date and filing their claims within 90 days following it. (Cf. *A. A. Baxter Corp.* v. *Home Owners & Lenders* (1970) 7 Cal.App.3d 725 [86 Cal.Rptr. 854] [owner's approval of work constituted completion, triggering 90-day period notwithstanding absence of notice of completion].)

Even assuming the failure to record a completion notice is a representation, however, in this case there is simply no evidence Fontana relied on that representation to its injury. Dianne Wickson's testimony did not show that Fontana relied on the absence of a notice of completion in delaying its claim of lien. The delay in filing the lien claim in Kern County resulted from Fontana's own mistake, not from anything Hedley did or did not do. While Wickson may have believed the June 4 filing was timely because no notice of completion was recorded, in fact the 90-day period had expired several weeks earlier. Thus, Fontana's lien rights had already lapsed when it checked the Kern County records, found no notice of completion, and recorded the second lien claim. Any reliance Fontana may have placed on the lack of a notice of completion did not cause Fontana injury. Its lien rights were already gone.

We conclude the evidence was insufficient to support Fontana's estoppel claim.

## DISPOSITION

Reversed and remanded with directions to enter judgment in favor of appellants. Costs to appellants.

Stone (W. A.), Acting P. J., and Dibiaso, J., concurred.